1  Jon T. Neumann, SBN 018858
   neumannj@gtlaw.com
2  Adrianna Gorton, SBN 031836
   gortona@gtlaw.com
3  GREENBERG TRAURIG, LLP
   2375 East Camelback Road, Suite 700
4  Phoenix, Arizona 85016
   Telephone: (602) 445-8000
5  Fax: (602) 445-8100

6  Daniel Pulecio-Boek *(Pro Hac Vice Forthcoming)*
   pulecioboekd@gtlaw.com
7  GREENBERG TRAURIG, LLP
   2101 L Street, N.W., Suite 1000
8  Washington DC 20037
   Telephone: (202) 331-3100
9  Fax: (202) 331-3101

10 *Attorneys for BRP 12, S.A. de C.V., Centro*
   *Educativo Tres Culturas, S.C., Eureka Mexico*
11 *Education, S.A. de C.V., Lottus Education,*
   *S.A.P.I. De C.V. and Universidad Tres Culturas, S.C.*
12
                    UNITED STATES DISTRICT COURT
13
                        DISTRICT OF ARIZONA
14

15 | In Re: | Misc. Case No. |
16 | *Ex Parte* Application of BRP 12, S.A. de C.V., Centro Educativo Tres Culturas, S.C., Eureka Mexico Education, S.A. de C.V., Lottus Education, S.A.P.I. de C.V. and Universidad Tres Culturas, S.C. for an Order to Obtain Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782 | **MEMORANDUM OF LAW IN SUPPORT OF APPLICATION FOR DISCOVERY IN AID OF FOREIGN PROCEEDINGS PURSUANT TO 28 U.S.C. § 1782** |

17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF CONTENTS</u>

TABLE OF CONTENTS ..................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... iv

INTRODUCTION ............................................................................................................. 1

THE PARTIES ................................................................................................................... 4

I.   Applicants ................................................................................................................. 4

II.  Vanta ........................................................................................................................ 4

FACTUAL BACKGROUND ............................................................................................ 4

I.   Purchase Agreement ................................................................................................. 4

    A.  Overview.......................................................................................................... 4

    B.  Negotiation....................................................................................................... 5

    C.  Purchase Price.................................................................................................. 5

    D.  "Earn-Out" Payments ..................................................................................... 7

    E.  Key Representations, Warranties and Covenants............................................ 7

    F.  Applicable Law and Dispute Resolution ........................................................ 8

II.  Post-Closing Discoveries ......................................................................................... 8

    A.  Concealed Discounts ....................................................................................... 9

    B.  False Student:Professor Ratio.......................................................................... 9

    C.  Hidden Debts and Liabilities ........................................................................... 9

    D.  Concealed Contract Amendments ................................................................... 9

    E.  Apparent Tax Evasion Scheme...................................................................... 10

III. Dispute.................................................................................................................... 11

    A.  Eureka and BRP Notify VEHL and VEDC of the Issues at ULA.................... 11

    B.  VEHL and VEDC Initiate Arbitration Against the Applicants .......................... 12

    C.  The Applicants Answer and File Counterclaims............................................... 13

i

D. The Mexican Arbitration .................................................................... 13

    1.   Nature of the Mexican Arbitration .................................................. 13

    2.   Phases of the Mexican Arbitration ................................................. 15

    3.   Submission of Evidence ................................................................ 15

IV. Evidence .......................................................................................................... 15

A. Foreign Proceedings Where the Applicants Will Use the Evidence ................. 15

B. Requested Evidence ...................................................................................... 16

C. Control of the Requested Evidence ................................................................ 16

ARGUMENT ................................................................................................................ 17

I.   Legal Standard ................................................................................................. 17

II.  The Application Satisfies Section 1782's Statutory Requirements ......................... 18

A. Vanta Resides or is Found in This District ..................................................... 18

B. The Mexican Arbitration, the Potential Individual Claims and the Mexican Tax Evasion Investigation Constitute Proceedings Before Foreign Courts or Tribunals ....................................................................................................... 18

    1.   The Mexican Arbitration .............................................................. 19

    2.   The Potential Individual Claims .................................................... 19

    3.   The Mexican Tax Evasion Investigation ........................................ 20

C. The Applicants Seek Evidence "For Use" in Proceedings Before Foreign Courts or Tribunals .................................................................................................. 20

D. The Applicants are "Interested Persons" ........................................................ 21

III. The Applicants Satisfy the Discretionary Factors for Discovery Under Section 1782 ............................................................................................................................ 21

A. Vanta is not a Party in the Mexican Arbitration or the Mexican Tax Evasion Investigation and will not be a Party in the Potential Individual Claims .......... 22

B. The Arbitration Tribunal, Mexican Courts and the IMSS Would Likely Accept the Requested Discovery ............................................................................... 23

C. The Applicants are not Attempting to Circumvent Foreign Policies ................. 24

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

    D.  The Discovery Sought is not Intrusive or Burdensome.......................................24

CONCLUSION .............................................................................................................25

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## <u>CASES</u>

*Abdul Latif Jameel Transp. Co. v. Fedex Corp. (In re Application to*
    *Obtain Discovery for Use in Foreign Proceedings)*,
    939 F.3d 710 (6th Cir. 2019) ........................................................................ 19

*Advanced Micro Devices, Inc. v. Intel Corp.*,
    292 F.3d 664 (9th Cir. 2002) ...................................................................... 22

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
    793 F.3d 1108 (9th Cir. 2015) .................................................................... 21

*Fonseca v. Blumenthal*,
    620 F.2d 322 (2d Cir. 1980) ...................................................................... 18

*Hachem v. Unknown Party*,
    No. MC-17-00057-PHX-DLR, 2017 U.S. Dist. LEXIS 184278
    (D. Ariz. Nov. 7, 2017) .............................................................................. 17

*In re Application of Chevron Corp. (Berlinger)*,
    709 F.Supp.2d 283 (S.D.N.Y. 2010), *aff'd Chevron Corp. v.
    Berlinger*, 629 F.3d 297 (2d Cir. 2011) .................................................. 24

*In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*,
    CIV.M19-88 BSJ, 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ................. 23

*In re Bayer AG*,
    146 F.3d 188 (3d Cir. 1998) ...................................................................... 24

*In re Hoteles City Express, Sociedad Anonima Bursatil De*,
    18-MC-80112-JSC, 2018 WL 3753865 (N.D. Cal. Aug. 8, 2018) ................ 19

*In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*,
    17-CV-01287, 2017 WL 3386115 (N.D. Ill. Aug. 7, 2017) ......................... 19

*In re Letters of Request to Examine Witnesses from Court of Queen's
    Bench for Manitoba, Canada*,
    59 F.R.D. 625 (N.D. Cal.), *aff'd*, 488 F.2d 511 (9th Cir. 1973) ................. 18

*In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office,
Tokyo, Japan (Okubo),*
16 F.3d 1016 (9th Cir. 1994) ................................................................ 20

*In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,*
539 F.2d 1216 (9th Cir. 1976) .............................................................. 20

*In re Merck & Co., Inc.,*
197 F.R.D. 267 (M.D.N.C. 2000) ......................................................... 18

*In re MoneyOnMobile, Inc.,*
19-MC-80128-VKD, 2019 WL 2515612, at *2 (N.D. Cal. June
18, 2019) ................................................................................................ 19

*Intel Corp. v. Advanced Micro Devices, Inc.,*
542 U.S. 241 (2004) ....................................................................... *passim*

*Nikon Corp. v. ASML US Inc.,*
MC-17-00035-PHX-JJT, 2017 WL 4024645 (D. Ariz. Sept. 12,
2017), *aff'd sub nom. In re Application Pursuant to 28 U.S.C. §
1782 to Take Discovery of ASML U.S., Inc.,* 707 Fed. Appx. 476
(9th Cir. 2017) ................................................................................. 18, 23

*Salcido-Romo v. S. Copper Corp.,*
CV-16-01639-PHX-DLR, 2016 WL 3213212 (D. Ariz. June 10,
2016) ............................................................................................... *passim*

*Super Vitaminas, S. A.,* 17-MC-80125-SVK, 2017 WL 5571037, at
*3 (N.D. Cal. Nov. 20, 2017) ............................................................... 21

*U.S. v. Sealed 1, Letter of Request,*
235 F.3d 1200 (9th Cir. 2000) .............................................................. 20

**Statutes**

28 U.S.C. § 1782 ............................................................................. *passim*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

BRP 12, S.A. de C.V. ("BRP"), Centro Educativo Tres Culturas, S.C. ("CETC"), Eureka Mexico Education, S.A. de C.V. ("Eureka"), Lottus Education, S.A.P.I. de C.V. ("Lottus") and Universidad Tres Culturas, S.C. ("UTC") (together, the "Applicants") submit this memorandum of law in support of their application (the "Application") to issue a subpoena pursuant to 28 U.S.C. § 1782 ("Section 1782") directing Vanta Education, Inc. ("Vanta") to produce documents and provide deposition testimony for use in (I) an arbitration proceeding in Mexico initiated by Vanta Education Holdings Limited ("VEHL") and Vanta Education Dutch Coop, LLC ("VEDC"), two of Vanta's offshore subsidiaries, against the Applicants; (II) related prospective court proceedings in Mexico; and (III) Mexican government investigations involving the Applicants.[1]

## INTRODUCTION

The Applicants seek information from Vanta for use in ongoing foreign proceedings in which the Applicants are parties and prospective proceedings in which the Applicants will be parties.  The Applicants are Mexican entities that own or manage Mexican education institutions.

Vanta is one of the largest companies in the world focusing on investments in the education space.  One of Vanta's investments was a 100% ownership interest in Universidad Latinoamericana, S.C. ("ULA"), a Mexican university.  In March 2019, VEHL and VEDC, the two subsidiaries through which Vanta owned ULA, entered into a contract for the sale of ULA to Eureka and BRP, with Lottus, CETC and UTC as joint obligors of Eureka and BRP.  At closing, Eureka and BRP paid to VEHL and VEDC approximately USD 73.5 million and agreed to pay additional amounts post-closing, subject to ULA meeting certain business and financial milestones.

After closing, when Eureka and BRP took over ULA's management and

---

[1]  The Applicants seeks to issue a subpoena *duces tecum* for the production of documents substantially in the same form as the subpoena attached as Exhibit B and a subpoena for testimony substantially in the same form as the subpoena attached as Exhibit C.

1

operations, they uncovered significant problems at ULA, including a potential tax evasion scheme. The issues that Eureka and BRP have recently uncovered were concealed from them during the negotiation leading to the sale of ULA and indicate that the sale contract contains numerous misrepresentations. The problems that Eureka and BRP have uncovered include (I) steep enrollment discounts; (II) a significantly lower student:professor ratio (the number of students per professor); (III) hidden debts; and (IV) an apparent failure to pay social security contributions (under Mexican law, considered a tax) for close to 400 professors since at least 2017. In late 2019, after the purchase, the Mexican government notified ULA of a tax evasion investigation for an apparent failure to pay social security contributions.

Through the information that VEHL and VEDC apparently concealed during the negotiation and misrepresented in the sale contract, they artificially inflated revenue and the number of enrolled students, while hiding debt. This induced Eureka and BRP to pay a significantly higher purchase price for ULA and was intended to cause Eureka and BRP to make higher post-closing payments. When Eureka and BRP informed VEHL and VEDC of their findings, including the Mexican government investigation, VEHL and VEDC simply denied that those issues affected the purchase price and in March 2020, initiated arbitration against the Applicants. The Applicants have filed counterclaims in the arbitration including for fraudulent inducement, fraudulent concealment and breaches of the sale contract's representations, warranties and covenants. An arbitration proceeding in Mexico is equivalent to a court proceeding, is regulated by Mexican law, and arbitrators have essentially the same authority as judges.

The Applicants need to defend from VEHL and VEDC's arbitration claim and need to prove their counterclaims. Additionally, Eureka and BRP plan to assert separate claims, through Mexican courts, against the directors, officers and employees of VEHL and VEDC who concealed information and made misrepresentations to Eureka and BRP during the negotiation of the sale agreement. Lastly, Eureka and BRP need to gather evidence for ULA's defense in the Mexican tax evasion investigation.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

1  
2  
3  
4  
5  

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

6  
7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  
25  
26  
27  
28  

Vanta owns and controls VEHL and VEDC and was responsible for the sale of ULA, including by leading the negotiations with Eureka and BRP, having its President sign the sale contract, as well as the documents in connection with the ongoing arbitration in Mexico.  As a result, Vanta likely controls or is in possession of the documents and information that Eureka and BRP require.

Pursuant to Section 1782, an applicant may seek discovery from a party found in the District for use in ongoing or prospective foreign proceedings.  This Application squarely meets Section 1782's statutory requirements:  the Applicants seek discovery from Vanta, an entity with its principal place of business in this District, for use in ongoing or prospective proceedings in Mexico.  In *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004), the Supreme Court outlined additional discretionary factors to assess in connection with a Section 1782 application.  Namely, (I) whether the documents or testimony sought are within the foreign tribunal's reach, and thus accessible absent Section 1782 aid; (II) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or tribunal to U.S. federal-court judicial assistance;  (III) whether the Section 1782 request circumvents foreign proof-gathering restrictions or other policies of a foreign country; and (IV) whether the discovery is unduly intrusive or burdensome requests.  Here, the *Intel* factors weigh heavily in the Applicants' favor: (I) Mexican courts and agencies do not have jurisdiction over Vanta and cannot compel it to produce any documents, let alone provide testimony; (II) the arbitration tribunal, Mexican courts and the Mexican tax agency are receptive to U.S.-court assistance; (III) this Application does not circumvent any Mexican policies; and (IV) the discovery sought is narrowly tailored to the sale of ULA and the problems that Eureka and BRP have encountered post-closing.

The Applicants therefore respectfully request that the Court grant their Application for discovery under Section 1782.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

## THE PARTIES

### I.    Applicants

The Applicants are five Mexican entities focused on managing education institutions in Mexico offering high-school, undergraduate and graduate programs and services.  Declaration of Diego Robles ("Robles Decl.") ¶ 2, attached hereto as Exhibit A.  The Applicants are part of the "Lottus Platform," a group of companies backed by domestic and international private equity investment funds.  Robles Decl. ¶ 1-2.  The institutions managed by the Lottus Platform have over 40,000 enrolled students across 37 campuses and learning centers in 14 states in Mexico.  Robles Decl. ¶ 1.

### II.    Vanta

Vanta is one of the largest investment funds in the world focused on the education space.  Vanta invests in education institutions, services and programs worldwide.  Robles Decl. ¶ 5.  Vanta's principal place of business is 4025 S. Riverpoint Parkway, CF-K301, Phoenix, AZ 85040 USA.  Robles Decl. ¶ 5.

Vanta owns and/or controls VEHL and VEDC, the two entities that sold ULA to Eureka and BRP.  Robles Decl. ¶ 6.  VEHL is a company organized under the laws of England and Wales and VEDC is a company organized under the laws of Delaware.  *Id*.

## FACTUAL BACKGROUND

### I.    Purchase Agreement

#### A.    Overview

On March 27, 2019, VEHL and VEDC entered into an agreement with Eureka and BRP for the sale of their 100% ownership interest in ULA (the "Purchase Agreement").  Robles Decl. ¶ 7.[2]  ULA was directly and wholly owned by the following two Mexican entities:  Vanta Education Mexico, S. de R.L. de C. V. ("VEM") and Vanta Education Mexico Sub, S. de R.L. de C. V. ("VEMS").  Robles Decl. ¶ 8, Ex. 1

---

[2] The Purchase Agreement is attached to the Robles Declaration as Exhibit 1.

at 19.   VEM and VEMS were subsidiaries of VEHL and VEDC.  *Id.*, Ex. 1 at 4.
Therefore, through the Purchase Agreement, VEHL and VEDC sold to Eureka and BRP
their ownership interest in VEM and VEMS.  *Id.*, Ex. 1 at 4.

Lottus, CETC and UTC signed the Purchase Agreement as joint obligors of
Eureka and BRP.  Robles Decl. ¶ 9, Ex. 1 at 75-76.

Mary Folline Morris Cullen ("Ms. Cullen"), Vanta's President, signed the
Purchase Agreement on behalf of VEHL and VEDC.  Robles Decl. ¶ 10, Ex. 1 at 73-74.
Additionally, the Purchase Agreement sets forth that any notices or communications to
VEHL and VEDC must be delivered to Matthew R. Henriksen ("Mr. Henriksen"),
Vanta's General Counsel, at Vanta's headquarters in Phoenix, Arizona.    Robles
Decl. ¶ 11, Ex. 1 at 69.

### B.    Negotiation

Vanta was responsible for the sale of ULA.  Robles Decl. ¶ 12.  For example,
Vanta and its advisors were responsible for creating the data room with ULA's
documents and for preparing and delivering to Eureka and BRP documents and
presentations describing ULA's operations and finances.    Robles Decl. ¶ 12.
Additionally, Vanta's executives communicated, corresponded and met with Eureka and
BRP regarding ULA's sale and to negotiate the terms of the Purchase Agreement.
Robles Decl. ¶ 13.

### C.    Purchase Price

Pursuant to the Purchase Agreement, Eureka and BRP would pay the purchase
price at closing (the "Preliminary Purchase Price").  Robles Decl. ¶ 14, Ex. 1 at § 2.05.
Closing took place on September 2, 2019 and Eureka and BRP paid approximately USD
73.5 million.  Robles Decl. ¶ 14.  The Preliminary Purchase Price is a multiple of
ULA's EBITDA.    Robles Decl. ¶ 15.    EBITDA (earnings before interest, tax,
depreciation and amortization) is a measure of a company's performance that reflects its
revenues, prior to the payment of taxes, interest rest rates on debts and the loss of the
book value of its assets.    *Id*.    It is standard to use a company's EBITDA as the

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

benchmark to calculate its sale price and parties frequently agree to a purchase price that is a multiple of the company's EBITDA. *Id.* As discussed below, Eureka and BRP are investigating whether VEHL and VEDC misrepresented ULA's revenues and concealed ULA's liabilities, which artificially inflated ULA's EBITDA, causing Eureka and BRP to overpay.

The Preliminary Purchase Price is subject to post-closing adjustments. Robles Decl. ¶ 16, Ex. 1 at § 2.06. In particular, after closing Eureka and BRP had to submit to VEHL and VEDC a document (known under the Purchase Agreement as the "Adjustment Certificate") calculating ULA's debt, working capital and cash balance at closing. *Id.*, Ex. 1 at § 2.06(a). The parties made it Eureka and BRP's responsibility to prepare the Adjustment Certificate because, post-closing, they would take over ULA's management and would therefore be in a position to review ULA's finances and calculate its debt, working capital and cash balance. Robles Decl. ¶ 16. VEHL and VEDC have the right to object to the Adjustment Certificate, and any disagreements are subject to Mexican arbitration. *Id.*, Ex. 1 at § 2.06(c). Once the Adjustment Certificate is final, the Purchase Agreement provides a set of rules to calculate a revised purchase price based on the Adjustment Certificate (the "Adjusted Purchase Price"). *Id.*, Ex. 1 at § 2.06(e). If the Adjusted Purchase Price is less than the Preliminary Purchase Price, VEHL and VEDC must pay the deficit to Eureka and BRP; if the Adjusted Purchase Price exceeds the Preliminary Purchase Price, Eureka and BRP must pay the difference to VEHL and VEDC. *Id.*, Ex. 1 at § 2.06(f)-(g).

As further discussed below, Eureka and BRP issued an Adjustment Certificate that accounts for the significant and pervasive problems they encountered at ULA, generating a lower Adjusted Purchase Price than VEHL and VEDC expected. VEHL and VEDC have initiated an arbitration in Mexico against the Applicants because they disagree with the Adjustment Certificate prepared by Eureka and BRP.

### D. "Earn-Out" Payments

The Purchase Agreement contemplates the possibility that Eureka and BRP may have to make as many as three bonus payments to VEHL and VEDC (known under the Purchase Agreement as the "Earn-Out Payments"). Robles Decl. ¶ 17, Ex. 1 at § 2.06(h). Specifically, after closing, Eureka and BRP had to submit to VEHL and VEDC a document (known under the Purchase Agreement as the "Earn-Out Certificate") setting forth ULA's revenue, enrollment and EBITDA in 2019. *Id.*, Ex. 1 at 2.06(h). The parties made it Eureka and BRP's responsibility to prepare the Earn-Out Certificate because, post-closing, they would take over ULA's management and would therefore be in a position to review and determine ULA's performance. Robles Decl. ¶ 17. VEHL and VEDC have the right to object to the Earn-Out Certificate, and any disagreements are subject to Mexican arbitration. *Id.*, Ex. 1 at § 2.06(h). Once the Earn-Out Certificate is final, the Purchase Agreement provides a set of rules to calculate the Earn-Out Payments. *Id.*, Ex. 1 at § 2.06(h).

As further discussed below, Eureka and BRP issued an Earn-Out Certificate that accounts for the significant and pervasive problems they encountered at ULA, generating lower Earn-Out Payments than VEHL and VEDC expected. The Mexican arbitration that VEHL and VEDC have initiated against the Applicants also encompasses their disagreement regarding the Earn-Out Certificate.

### E. Key Representations, Warranties and Covenants

The Purchase Agreement contains a number of key representations, warranties and covenants that were material for inducing Eureka and BRP to enter into the deal. Robles Decl. ¶ 18. For example, VEHL and VEDC represented and warranted that (1) ULA's financial statements were prepared in accordance with the applicable accounting rules and standards, *id.*, Ex. 1 at § 3.05; (2) they had disclosed all of ULA's liabilities, *id.*, Ex. 1 at § 3.06; (3) they had disclosed all of ULA's tax investigations and audits, *id.*, Ex. 1 at § 3.07; (4) since January 2019, ULA had not changed in any meaningful way its business practices, *id.*, Ex. 1 at § 3.08; (5) ULA was in compliance with Mexican labor

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

and employment laws, *id.*, Ex. 1 at § 3.16; and (6) they had disclosed all investigations and litigations against ULA, *id.*, Ex. 1 at § 3.20. VEHL and VEDC also entered into a covenant prohibiting ULA from changing in any meaningful way its business practices from March 27, 2019 (the date of the Purchase Agreement) until closing. Robles Decl. ¶ 19, Ex. 1 at § 6.01.

For Eureka and BRP to claim a breach of some of the representations and warranties mentioned above (including § 3.06, § 3.07, § 3.08, § 3.16 and § 3.20), Eureka and BRP would need to show "knowledge" of VEHL and VEDC, which is defined by the Purchase Agreement as the knowledge of the following three individuals: Ms. Cullen, Vanta's President, Ralf Gustav Peters Castilla ("Mr. Peters"), Vanta's Director of Mexico and Central America, and Jose Vicente Cruz Navarro ("Mr. Cruz"), ULA's General Manager. Robles Decl. ¶ 20, Ex. 1 at H (Exhibit 1.01(g)).

### F.    Applicable Law and Dispute Resolution

The Purchase Agreement is governed by Mexican law and any disputes between the parties are subject to arbitration under the rules of arbitration (the "Rules of Arbitration") of the International Chamber of Commerce (the "ICC"). Robles Decl. ¶ 21, Ex. 1 at 11.09(c). Claims against the parties' directors, officers, employees and agents are not governed by the Purchase Agreement's arbitration clause. Robles Decl. ¶ 21.

The Purchase Agreement requires an arbitration tribunal comprised of three arbitrators:  one appointed by the claimants, one appointed by the respondents and one appointed by the two arbitrators. Robles Decl. ¶ 22, Ex. 1 at § 11.09(c). The place of the arbitration is Mexico City. *Id.*, Ex. 1 at § 11.09(d).

## II.    Post-Closing Discoveries

Shortly after closing, Eureka and BRP discovered significant problems at ULA. Robles Decl. ¶ 23. Specifically, Eureka and BRP discovered that VEHL and VEDC had misrepresented and concealed material information regarding ULA's finances and operations. *Id*. Below are examples of the problems that Eureka and BRP had thus far

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

uncovered. *Id*. Eureka and BRP are investigating the existence of additional issues, as well as the extent and financial impact of all the problems at ULA. *Id*.

### A. Concealed Discounts

Eureka and BRP have discovered that starting no later than early 2019, ULA offered steep enrollment discounts, as a high as 90% of the price of enrollment. Robles Decl. ¶ 24. This inflated the number of enrolled students during 2019, while reducing ULA's revenue. *Id*. VEHL and VEDC never disclosed these discounts to Eureka and BRP who discovered them post-closing. *Id*. Eureka and BRP are investigating how many students benefitted from these discounts, the date when ULA began offering these discounts, and the financial impact that these discounts will have on ULA's finances and operations. *Id*.

### B. False Student:Professor Ratio

Eureka and BRP have discovered that ULA's student:professor ratio is lower than the ratio represented to Eureka and BRP prior to closing. The student:professor ratio is a key metric in a university because it indicates the attention that each professor can dedicate to the students. Robles Decl. ¶ 25.

### C. Hidden Debts and Liabilities

Eureka and BRP have discovered that starting no later than early 2019, ULA postponed the dates of payments that it owed under several contracts until late 2019, such that the payments would be due post-closing. Robles Decl. ¶ 26. This artificially reduced ULA's liabilities at the time of closing. *Id*.

VEHL and VEDC never disclosed these liabilities and Eureka and BRP discovered them post-closing. Robles Decl. ¶ 27. Eureka and BRP are investigating the total amount of ULA's hidden debts. *Id*.

### D. Concealed Contract Amendments

Eureka and BRP have discovered that starting no later than early 2019, ULA changed the terms of key contracts to the detriment of ULA. Robles Decl. ¶ 28. For example, ULA reduced the coverage of certain insurance policies and the services

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

included in some of ULA's software licenses.  *Id*.  VEHL and VEDC never disclosed these changes and Eureka and BRP discovered them post-closing.  *Id*.  Eureka and BRP are investigating the total amount of detrimental contract amendments and their financial impact on ULA.  *Id*.

## E.   Apparent Tax Evasion Scheme

In Mexico, employers have to contribute to Mexican social security a percentage of their employees' salaries.  Robles Decl. ¶ 29.  Mexican law treats these social security contributions as taxes.  *Id*.  In November 2019, the Mexican Social Security Institute (*Instituto Mexicano del Seguro Social*, the "IMSS") informed ULA that it was investigating ULA's failure to pay the social security contributions of approximately 400 professors since as early as 2017 (the "Mexican Tax Evasion Investigation"). *Id*.  In February 2020, the IMSS subpoenaed ULA's auditor seeking information regarding those professors and ULA's alleged failure to pay their social security contributions.  *Id*.

The consequences of the Mexican Tax Evasion Investigation can be potentially devastating for Eureka and BRP.  Robles Decl. ¶ 30.  As a starting matter, it could result in criminal investigations for tax evasion against ULA's current directors and officers.  *Id*.  Additionally, the IMSS has the authority to freeze all of the bank accounts of a target of a tax evasion investigation, pending the outcome of the investigation. *Id*.  Here, the IMSS could potentially freeze all of ULA's bank accounts, preventing ULA from continuing to operate and forcing it to shut down.  *Id*.  Lastly, the potential exposure for the failure to pay the social security contributions, including unpaid contributions, fines and interest, could exceed USD 5 million. *Id*.

VEHL and VEDC never disclosed to Eureka and BRP their failure to pay social security contributions and the attendant legal and financial exposure.  Robles Decl. ¶ 31.  Further, the money that ULA saved by failing to pay these social security contributions likely reduced ULA's liabilities, inflated its revenues and resulted in a higher EBITDA. *Id*.  As discussed above, Eureka and BRP paid VEHL and VEDC a multiple of ULA's EBITDA and, therefore, if ULA's EBITDA was artificially inflated, then Eureka and

BRP overpaid for ULA.  Robles Decl. ¶ 15, 31.  Eureka and BRP are investigating the scope of this issue, including when ULA began failing to pay the social security contributions, how much it failed to pay and how this issue impacted ULA's EBITDA.  Robles Decl. ¶ 32.

For now, and pursuant to their indemnification obligations under the Purchase Agreement, VEHL and VEDC are directing ULA's defense in the Mexican Tax Evasion Investigation.  Robles Decl. ¶ 33.

## III.   Dispute

### A.   Eureka and BRP Notify VEHL and VEDC of the Issues at ULA

As discussed above, post-closing, Eureka and BRP were required to issue an Adjustment Certificate and an Earn-Out Certificate.  Robles Decl. ¶¶ 16-17, Ex. 1 at §§ 2.06(a)-(h).  The Adjustment Certificate reflects ULA's finances at closing and allows Eureka and BRP to calculate the Adjusted Purchase Price.  Robles Decl. ¶ 16.  If the Adjusted Purchase Price is less than the Preliminary Purchase Price, VEHL and VEDC must pay the deficit to Eureka and BRP; if the Adjusted Purchase Price exceeds the Preliminary Purchase Price, Eureka and BRP must pay the difference to VEHL and VEDC.  *Id.*, Ex. 1 at § 2.06(f)-(g).  The Earn-Out Certificate reflects ULA's performance in 2019 and may result in as many as three Earn-Out Payments to VEHL and VEDC.  Robles Decl. ¶ 17.

In late 2019, Eureka and BRP notified VEHL and VEDC of the problems they had encountered at ULA, including the IMSS's letter informing of the Mexican Tax Evasion Investigation.  Robles Decl. ¶ 34.  VEHL and VEDC failed to provide any justification, let alone complete documentation and information, regarding the problems that Eureka and BRP had been identifying.  *Id.*  Eureka and BRP ultimately issued the Adjustment Certificate and the Earn-Out Certificate, accounting for the issues that they had identified at ULA.  *Id.*  VEHL and VEDC objected to the Adjustment Certificate and the Earn-Out Certificate on the ground that the Purchase Agreement did not allow Eureka and BRP to include the lower revenue and additional liabilities that they had

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

uncovered post-closing in the calculations underlying the Adjustment Certificate and the Earn-Out Certificate. *Id.* VEHL and VEDC therefore argued that the Adjustment Certificate should result in a higher Adjusted Purchase Price and that the Earn-Out Certificate should result in higher Earn-Out Payments. *Id.*

Ms. Cullen, Vanta's President, signed on behalf of VEHL and VEDC all the pre-litigation correspondence that the parties exchanged. Robles Decl. ¶ 35.

## B. VEHL and VEDC Initiate Arbitration Against the Applicants

On March 16, 2020, VEHL and VEDC initiated arbitration against Eureka and BRP as purchasers and against Lottus, CETC and UTC as joint obligors. Robles Decl. ¶ 36. Specifically, VEHL and VEDC filed a request for arbitration (the "Request for Arbitration"), which is equivalent to a complaint, before the ICC (the "Mexican Arbitration"). *Id.*[3] Ms. Cullen, Vanta's President, signed the Request for Arbitration on behalf of VEHL and VEDC. *Id*, Ex. 2 at 16.

In the Request for Arbitration, VEHL and VEDC allege that Eureka and BRP breached the Purchase Agreement by issuing an Adjustment Certificate and an Earn-Out Certificate against the parameters set forth in the Purchase Agreement, *i.e.*, accounting for the financial and operational problems that Eureka and BRP uncovered post-closing. Robles Decl. ¶ 37, Ex. at 2 at 7-8, ¶¶ 18-21. According to VEHL and VEDC's calculations, Eureka and BRP should pay them a total of approximately USD 8 million in Earn-Out Payments and a total of approximately USD 400,000 for the Adjusted Purchase Price. *Id*, Ex. 2 at 12, ¶¶ 39-40.

Therefore, the Request for Arbitration seeks that the arbitration tribunal decide (1) how Eureka and BRP should calculate the Adjustment Certificate and the Earn-Out Certificate, including whether they may include the lower revenues and hidden liabilities that they have been discovering at ULA; and (2) the final calculation of the Adjustment Certificate and the Earn-Out Certificate and thus, the final amount of the

---

[3] The Request for Arbitration is attached to the Robles Declaration as Exhibit 2.

LAW OFFICES
GREENBERG TRAURIG
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

Adjusted Purchase Price and of the Earn-Out Payments.  Robles Decl. ¶ 38, Ex. 2 at 12-13, ¶ 41.

### C.    The Applicants Answer and File Counterclaims

On April 20, 2020, the Applicants filed their answer and counterclaims (the "Answer and Counterclaims").  Robles Decl. ¶ 39.[4]

In their Answer and Counterclaims, the Applicants deny VEHL and VEDC's allegations and assert counterclaims for numerous violations of the Purchase Agreement and for fraudulent inducement and concealment.  Robles Decl. ¶ 40, Ex. 2 at 12-13, ¶¶ 29-31.  The Applicants seek declaratory relief and damages.  *Id*.

In addition to their counterclaims against VEHL and VEDC in the Mexican Arbitration, Eureka and BRP plan to file separate claims in Mexican court against the directors, officers and employees of VEHL and VEDC that misrepresented and concealed information from Eureka and BRP in connection with the Purchase Agreement (the "Potential Individual Claims").  Robles Decl. ¶ 41.  These claims are not covered by the Purchase Agreement's arbitration clause.  *Id*.

### D.    The Mexican Arbitration

As discussed above, the Purchase Agreement provides for arbitration in Mexico City, before an arbitration tribunal comprised of three arbitrators, under the Rules of Arbitration of the ICC.  Robles Decl. ¶ 22, Ex. 1 at § 11.09(d).

#### 1.    Nature of the Mexican Arbitration

The Mexican Arbitration is essentially a Mexican judicial proceeding and the arbitrators in the tribunal will act essentially as Mexican judges.  Robles Decl. ¶ 42.

First, any arbitration in Mexico is a judicial proceeding, in all material respects identical to an ordinary civil litigation before a Mexican judge.   Robles Decl. ¶ 43.  Indeed, Mexican law governs any arbitration in Mexico.  *Id*.  Specifically, Mexican arbitrations are subject to the rules set forth in the Mexican Code of Commerce, the

---

[4] The Answer and Counterclaims are attached to the Robles Declaration as Exhibit 3.

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA  85016
(602) 445-8000

statute that governs commercial transactions and litigations. *Id.* If the parties agree to submit an arbitration to the rules of an arbitration body, such as the ICC's Rules of Arbitration, those rules will generally supplement Mexican law and the Code of Commerce's rules are the default. *Id.*

Importantly, there are rules in the Code of Commerce that prevail over any private arbitration rules. Robles Decl. ¶ 44. For example, under the Mexican Code of Commerce, (i) arbitrators must disclose prior to accepting their appointment any facts potentially compromising their independence; (ii) an arbitration tribunal has jurisdiction to decide the scope of the arbitration agreement, including the validity of the agreement; (iii) the arbitration tribunal may at any time during the proceeding issue injunctive relief; (iv) the parties must have an equal opportunity to present their claims and defenses to the tribunal; (v) the parties must set forth their claims and defenses in written pleadings and must provide to the tribunal the evidence that supports those claims and defenses; (vi) the parties cannot make *ex-parte* submissions to the arbitration tribunal; (vii) an award must be in writing, must be served on the parties and is binding on the parties; and (viii) the parties may file a request with Mexican courts to annul the award. *Id.*

Second, an arbitration under the Rules of Arbitration of the ICC is essentially identical to an ordinary Mexican civil litigation. Robles Decl. ¶ 45. As further discussed below, an ICC arbitration begins with a request for arbitration, akin to a complaint; and the respondent may answer and file counterclaims. *Id.* Then, the parties exchange documents and information. *Id.* After the close of discovery, the tribunal conducts a trial. *Id.* Lastly, the tribunal issues a binding award, which is akin to a judgment by a judge. *Id.* The parties may challenge the award by filing a motion to annul the award before Mexican courts and the decision by a Mexican court granting or denying a motion to annul is subject to further judicial review via an *amparo*, which is a type of challenge under Mexican law for constitutional or due process violations. *Id.* Further, the parties may at any time obtain preliminary injunctive relief. *Id.*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

14

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

2.      Phases of the Mexican Arbitration

Here, in accordance with Mexican law and the Rules of Arbitration of the ICC, the Mexican Arbitration will have the following phases.  As discussed above, VEHL and VEDC filed their Request for Arbitration and appointed the first arbitrator on March 16, 2010.   Robles Decl. ¶ 36.   The Applicants filed their Answer and Counterclaims on April 20, 2020 and appointed the second arbitrator.  Robles Decl. ¶ 39.  The two arbitrators will then appoint the third arbitrator.  Robles Decl. ¶ 22.

Once the arbitration tribunal is established, the tribunal will issue a scheduling order, which usually includes two rounds of briefs, followed by discovery, and a trial. Robles Decl. ¶ 46.   Generally, in the first round of briefs, the parties submit the evidence in support of their claims and defenses. *Id*.  The parties then exchange requests for documents and produce documents. *Id*.  Thereafter, the parties file a second round of briefs in support of their claims and defenses, based on information they obtained in discovery.  *Id*.  Lastly, the tribunal holds a trial and issues the award.  *Id*.

3.      Submission of Evidence

There is no prohibition under Mexican law or under the Rules of Arbitration of the ICC for parties to submit to the tribunal evidence obtained from third parties or with the assistance of foreign courts, including via a Section 1782 application.   Robles Decl. ¶ 47.   Indeed, it would be a violation of Mexican constitutional law and due process rights to deprive a party of the opportunity to provide evidence to an arbitration tribunal, especially if it is evidence that the party did not previously have in its possession and that the party has lawfully obtained. *Id*.  Therefore, here, the Applicants should be able to submit the evidence they obtain from Vanta via this Application and there is no restriction inhibiting the tribunal from considering such evidence.  *Id*.

IV.   **Evidence**

A.      **Foreign Proceedings Where the Applicants Will Use the Evidence**

The Applicants need the evidence they seek through this Application to (1) defend from VEHL and VEDC's arbitration claims and prove their counterclaims; (2)

15

file the Potential Individual Claims in Mexican courts against the directors, officers, employees and agents of VEHL and VEDC who concealed information and made misrepresentations to Eureka and BRP in connection with the Purchase Agreement; and (3) prepare the defense of ULA and its employees in the Mexican Tax Evasion Investigation. Robles Decl. ¶ 48.

### B. Requested Evidence

The Applicants need from Vanta documents and communications, including emails, and testimony regarding (1) the problems that Eureka and BRP have thus far uncovered at ULA; (2) other breaches of the representations, warranties and covenants in the Purchase Agreement; (3) the extent of the problems at ULA that constitute breaches of the Purchase Agreement, including the date when they began, and their impact on ULA's operations and finances; (4) the knowledge of the Purchase Agreement's breaches by Ms. Cullen, Vanta's President, Mr. Peters, Vanta's Director of Mexico and Central America, Mr. Cruz, ULA's General Manager, because the Applicants must demonstrate their knowledge to prevail on some of their claims; (5) the knowledge of the directors, officers, employees and agents of VEHL and VEDC with whom Eureka and BRP communicated in connection with the Purchase Agreement regarding the problems at ULA that Eureka and BRP have now discovered to determine whether they misrepresented and concealed information from Eureka and BRP; and (6) who knew of, participated in or authorized the failure to pay the social security contributions of ULA's employees. Robles Decl. ¶ 49.

### C. Control of the Requested Evidence

The evidence that the Applicants seek is likely in Vanta's custody, possession or control. Robles Decl. ¶ 3. Indeed, Vanta directly or indirectly owns and controls VEHL and VEDC and was responsible for the sale of ULA. Robles Decl. ¶ 12. For example, as set forth above, (1) Vanta and its advisors prepared and delivered the due diligence materials to VEHL and VEDC providing details regarding ULA's finances and operations; (2) Vanta's executives met, participated in calls and corresponded with

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

16

Eureka and BRP to negotiate the sale of ULA; (3) Ms. Cullen, Vanta's President, was the Chairman of the Board of Directors of VEM and VEMS, the Vanta subsidiaries that directly owned ULA; (4) Ms. Cullen signed the Purchase Agreement on behalf VEHL and VEDC; (5) Ms. Cullen signed the pre-litigation correspondence sent by VEHL and VEDC to Eureka and BRP; (6) the Purchase Agreement designated Vanta's address in this District, and the name of Mr. Henriksen, Vanta's General Counsel, for any notices or correspondence related to the Purchase Agreement; and (7) Ms. Cullen signed the Request for Arbitration on behalf of VEHL and VEDC.  *See generally* Robles Decl.

**ARGUMENT**

I.  **Legal Standard**

Section 1782's purpose is to allow participants in foreign or international tribunals to obtain "federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247 (2004).  The text of Section 1782 provides that any "interested person" may petition the Court and that upon such a petition, "the district court of the district in which a person resides or is found may order [the person] to give [] testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal." 28 U.S.C. § 1782.

Section 1782 authorizes the Court to grant discovery when: "(1) the person from whom discovery is sought must 'reside' or be 'found' in the district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an 'interested person.'" *Hachem v. Unknown Party*, No. MC-17-00057-PHX-DLR, 2017 U.S. Dist. LEXIS 184278 (D. Ariz. Nov. 7, 2017) (quoting *In re Godfrey*, 526 F. Supp. 2d 417, 418 (S.D.N.Y. 2007)).

Once the Court determines that the statutory requirements are satisfied, the Court may exercise its discretion to grant the application.  In doing so, the Court may consider four discretionary factors:  (A) whether the requested discovery is within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (B) the

17

nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or tribunal to U.S. federal-court judicial assistance; (C) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country; and (D) whether the subpoena is unduly intrusive or burdensome.  *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. at 264-65 (2004).

## II.   The Application Satisfies Section 1782's Statutory Requirements

### A.   Vanta Resides or is Found in This District

As set forth above, Vanta's headquarters are in Phoenix, Arizona.  Robles Decl. ¶ 5.  An entity resides or is found in a District for purposes of Section 1782 when its principal place of business is in the District.  *See Nikon Corp. v. ASML US Inc.*, MC-17-00035-PHX-JJT, 2017 WL 4024645, at *2 (D. Ariz. Sept. 12, 2017), *aff'd sub nom. In re Application Pursuant to 28 U.S.C. § 1782 to Take Discovery of ASML U.S., Inc.*, 707 Fed. Appx. 476 (9th Cir. 2017) (holding that a company was "'found' within the District of Arizona" because it maintained its principal place of business within the District).

### B.   The Mexican Arbitration, the Potential Individual Claims and the Mexican Tax Evasion Investigation Constitute Proceedings Before Foreign Courts or Tribunals

As a starting matter, courts analyzing the terms "foreign or international tribunal" have considered the terms broadly to be a non-U.S. body that has an adjudicatory function, whether judicial or quasi-judicial.  *See In re Letters of Request to Examine Witnesses from Court of Queen's Bench for Manitoba, Canada,* 59 F.R.D. 625, 629 (N.D. Cal.), *aff'd*, 488 F.2d 511 (9th Cir. 1973) (explaining that "the crucial requirement is that the foreign body exercise adjudicative power, and have an adjudicative purpose"); *In re Merck & Co., Inc.*, 197 F.R.D. 267, 270 (M.D.N.C. 2000) ("A proceeding includes any proceeding in which an adjudicated function is being exercised or is imminent."); *Fonseca v. Blumenthal*, 620 F.2d 322, 323 (2d Cir. 1980) ("It is evident that Congress intended 'tribunal' to have an adjudicatory connotation.").

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

The Mexican Arbitration, the Potential Individual Claims and the Mexican Tax Evasion Investigation all clearly fall within the scope of Section 1782.

### 1.    The Mexican Arbitration

The Mexican Arbitration is clearly a proceeding before a "foreign tribunal" within the meaning of Section 1782.  *See Abdul Latif Jameel Transp. Co. v. Fedex Corp. (In re Application to Obtain Discovery for Use in Foreign Proceedings)*, 939 F.3d 710, 714 (6th Cir. 2019) (granting discovery for use in a foreign commercial arbitration); *In re MoneyOnMobile, Inc*., 19-MC-80128-VKD, 2019 WL 2515612, at *2 (N.D. Cal. June 18, 2019) (similar).

As discussed above, the Mexican Arbitration is in all material respects identical to an ordinary civil litigation before Mexican courts, and the arbitrations have the same authority as Mexican judges to issue a final and binding award.  Robles Decl. ¶ 42. Therefore, the arbitration tribunal that will decide the Mexican Arbitration is a "foreign tribunal." *In re Kleimar N.V v. Benxi Iron & Steel Am., Ltd.*, 17-CV-01287, 2017 WL 3386115, at *4-5 (N.D. Ill. Aug. 7, 2017) (holding that a foreign arbitration tribunal is a "foreign tribunal" under Section 1782).

### 2.    The Potential Individual Claims

As discussed above, Eureka and BRP plan to bring claims against the directors, officers, employees and agents of VEHL and VEDC who misrepresented or concealed information regarding ULA's operations and finances.  Robles Decl. ¶ 41.  Eureka and BRP would bring these claims before Mexican courts. *Id*. A civil litigation before a foreign court clearly falls within the scope of Section 1782. *See In re Hoteles City Express, Sociedad Anonima Bursatil De*, 18-MC-80112-JSC, 2018 WL 3753865, at *1 (N.D. Cal. Aug. 8, 2018) (granting discovery pursuant to Section 1782 to a party preparing to file a lawsuit in Mexico); *see also Salcido-Romo v. S. Copper Corp*., CV-16-01639-PHX-DLR, 2016 WL 3213212, at *2 (D. Ariz. June 10, 2016) (granting in part a party's request for discovery pursuant to Section 1782 for use in current Mexican litigation and proposed, future litigation).  Additionally, Section 1782 encompasses both

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

ongoing and prospective proceedings. *Id*. The Potential Individual Claims are a prospective proceeding for which Section 1782 allows discovery. *Id*.

### 3.    The Mexican Tax Evasion Investigation

As discussed above, the IMSS is investigating whether ULA failed to pay social security contributions (a tax) since as early as 2017 for at least 400 professors.  Robles Decl. ¶ 29.  This is an investigation by the Mexican government, in which the IMSS will determine whether ULA or its prior or current directors, officers and employees violated Mexican law and will issue a decision to collect unpaid taxes, interest and penalties.  Robles Decl. ¶ 30.  The Mexican Tax Evasion Investigation falls well within the scope of Section 1782.  *See, e.g.*, *U.S. v. Sealed 1, Letter of Request*, 235 F.3d 1200, 1205 (9th Cir. 2000) (upholding a district court decision to grant discovery pursuant to Section 1782 for use in a criminal investigation even if the actual foreign criminal proceeding is not "imminent"); *see also In re Letters Rogatory from the Tokyo Dist. Prosecutor's Office, Tokyo, Japan (Okubo),* 16 F.3d 1016 (9th Cir. 1994) (authorizing discovery for use in Japanese murder investigation before charges filed); *In re Letters Rogatory from the Tokyo Dist., Tokyo, Japan,* 539 F.2d 1216, 1217 (9th Cir. 1976) (authorizing depositions "to be used in criminal investigations and possible future criminal trials").

### C.    The Applicants Seek Evidence "For Use" in Proceedings Before Foreign Courts or Tribunals

As explained above, the Applicants will use the evidence they seek through this Application to (1) defend from VEHL and VEDC's arbitration claims and demonstrate their counterclaims; (2) file the Potential Individual Claims in Mexican courts against the directors, officers, employees and agents of VEHL and VEDC who concealed information and made misrepresentations to Eureka and BRP in connection with the Purchase Agreement; and (3) prepare the defense of ULA and its employees in the Mexican Tax Evasion Investigation.  Robles Decl. ¶ 48.

As discussed above, for now and in furtherance of their indemnification obligations under the Purchase Agreement, VEHL and VEDC are directing ULA's defense in the Mexican Tax Investigation. Robles Decl. ¶ 33. Eureka and BRP, however, preserve the right to provide evidence to the IMSS or to request that VEHL and VEDC provide specific evidence to the IMSS in ULA's defense. *Id.* Additionally, VEHL and VEDC may eventually cease to defend ULA. Considering the potential consequences discussed above, Eureka and BRP cannot risk that ULA's defense might be set adrift and must gather evidence now for use in ULA's defense. *Id.*

### D.   The Applicants are "Interested Persons"

The Applicants are respondents and counterclaimants in the Mexican Arbitration and Eureka and BRP are the potential plaintiffs in the Potential Individual Claims. Robles Decl. ¶ 39, 41. As such, they are "interested persons" under Section 1782. *See Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015) (party to foreign proceeding was "interested person" for purposes of Section 1782). Importantly, the Supreme Court has confirmed that "litigants . . . may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256.

Additionally, Eureka and BRP are potentially exposed to the devastating consequences of the Mexican Tax Evasion Investigation. Robles Decl. ¶ 30. As such, they are also "interested persons" for purposes of Section 1782 discovery in connection with the Mexican Tax Evasion Investigation. *Super Vitaminas, S. A.,* 17-MC-80125-SVK, 2017 WL 5571037, at *3 (N.D. Cal. Nov. 20, 2017) (holding that target of a foreign tax evasion investigation was an "interested person" and authorizing discovery for use in the investigation).

### III.   The Applicants Satisfy the Discretionary Factors for Discovery Under Section 1782

The four discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004) also weigh in favor of granting the Application. In

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

considering the *Intel* factors, courts are instructed to consider "the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistant to our courts." *Salcido-Romo v. S. Copper Corp.*, 2016 WL 3213212 at *2 ("the Court is authorized to grant Petitioners' request if it deems the request appropriate and if doing so will serve the twin aims of the statute."); *see also Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) ("allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782[.]").

### A. Vanta is not a Party in the Mexican Arbitration or the Mexican Tax Evasion Investigation and will not be a Party in the Potential Individual Claims

Courts usually grant applications for discovery pursuant to Section 1782 if the discovery target is not a party in the foreign proceeding. *See Intel*, 542 U.S. at 264. That is because, as the Supreme Court held, "nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid." *Id*. Accordingly, courts find the first *Intel* factor satisfied and grant discovery where a discovery target was "not a participant in any of the foreign proceedings" and "will not and cannot be a party" to future proceedings. *Salcido-Romo v. S. Copper Corp.*, 2016 WL 3213212 at *2 (granting in part discovery pursuant to Section 1782 in current Mexican litigation and contemplated future litigation).

Here, Vanta is not, nor can it ever be, a participant in the Mexican Arbitration and, therefore, not within the jurisdiction of the Mexican arbitration tribunal. The Mexican Arbitration arises from the arbitration clause of the Purchase Agreement, which only covers disputes between the parties of the Purchase Agreement. Robles Decl. ¶ 21. Vanta is not a party to the Purchase Agreement and therefore cannot sue or be sued in the Mexican Arbitration. Robles Decl. ¶¶ 7, 21.

Additionally, the Potential Individual Claims will target directors, officers, employees and agents of VEHL and VEDC, not Vanta. Robles Decl. ¶ 41. Lastly, the

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

IMSS is not investigating, and Vanta is not a party to, the Mexican Tax Evasion Investigation.  Robles Decl. ¶¶ 29-30.

Accordingly, neither the arbitration tribunal, nor Mexican courts, nor the IMSS can compel Vanta to produce discovery in connection with, respectively, the Mexican Arbitration, the Potential Individual Claims, or the Mexican Tax Evasion Investigation.  Robles Decl. ¶ 21, 29-30.  As a result, the Applicants do not have any other means to obtain the requested discovery.

Therefore, the first *Intel* factor weighs heavily in favor of granting this Application.

### B.   The Arbitration Tribunal, Mexican Courts and the IMSS Would Likely Accept the Requested Discovery

Courts find that a Section 1782 application meets the second *Intel* factor and courts tend to allow discovery when "the parties do not produce evidence showing that a foreign court would reject evidence obtained under Section 1782[.]" *Nikon Corp. v. ASML US Inc.,* 2017 WL 4024645 at *3 (granting partial discovery pursuant to Section 1782 when "courts appear to be receptive to evidence").  In the absence of such proof, Section 1782's "overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects" weighs in favor of granting discovery.  *Id.*; *Salcido-Romo v. S. Copper Corp.*, 2016 WL at *4 (D. Ariz. June 10, 2016) (holding that Mexican courts are receptive to discovery obtained through U.S. courts); *In re Application of Gemeinshcaftspraxis Dr. Med. Schottdorf*, CIV.M19-88 BSJ, 2006 WL 3844464, at *6 (S.D.N.Y. Dec. 29, 2006) (in absence of "authoritative proof" of foreign tribunal's position "courts generally should err on the side of permitting the requested [1782] discovery").

No such "authoritative proof" exists here.  Under Mexican law and the ICC's Rules of Arbitration, a Mexican arbitration tribunal may receive all kinds of evidence, including evidence obtained from third parties, including via Section 1782 proceedings.  Robles Decl. ¶ 47.  There is no prohibition under Mexican law or under the Rules of

Arbitration of the ICC for parties to submit to the tribunal evidence that they obtained from third parties or with the assistance of foreign courts, including via a Section 1782 application.  *Id*.  Therefore, here, the Applicants should be able to submit the evidence they obtain through this Application and there is no restriction inhibiting the tribunal from considering such evidence.  *Id*.  Accordingly, the second *Intel* factor weighs heavily in the Applicants' favor.  *See In re Application of Chevron Corp. (Berlinger)*, 709 F.Supp.2d 283 (S.D.N.Y. 2010), *aff'd Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011) (claimants in an investment treaty UNCITRAL arbitration obtained evidence for use in a foreign arbitration).

Similarly, Mexican courts and Mexican government agencies accept evidence obtained from third parties, including via Section 1782 proceedings.  Robles Decl. ¶ 47; *see also Salcido-Romo v. S. Copper Corp.*, 2016 WL 3213212 at *4.

## C.    The Applicants are not Attempting to Circumvent Foreign Policies

The third discretionary factor also weighs in favor of granting this Application. The Applicants are not attempting to circumvent any proof-gathering limitations or other policies applicable to the Mexican Arbitration, Mexican court proceedings or IMSS's proceedings.  Robles Decl. ¶ 47.

## D.    The Discovery Sought is not Intrusive or Burdensome

Finally, the Applicants satisfy the fourth *Intel* factor because the requested discovery is not "unduly intrusive or burdensome."  *Intel*, 542 U.S. at 265.  The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure.  "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute."  *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998).

Here, the request is narrowly tailored to the specific categories of information described in this Application—namely, information regarding the five concrete issues

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

24

that Eureka and BRP have recently uncovered at ULA—and which the Applicants have good reason to believe is in Vanta's custody, possession or control.

### CONCLUSION

For all the foregoing reasons, the Applicants respectfully request that the Court enter an Order pursuant to Section 1782, granting them leave to serve the subpoena and conduct the requested discovery.

DATED this 30th day of April, 2020.

GREENBERG TRAURIG, LLP

By:*/s/ Jon T. Neumann*
    Jon T. Neumann
    Adrianna Griego Gorton
    Daniel Pulecio-Boek (*Pro Hac Vice Forthcoming*)

    *Attorneys for BRP 12, S.A. De C.V., Centro Educativo Tres Culturas, S.C., Eureka Mexico Education, S.A. De C.V., Lottus Education, S.A.P.I. De C.V. and Universidad Tres Culturas, S.C.*

LAW OFFICES
**GREENBERG TRAURIG**
2375 EAST CAMELBACK ROAD, SUITE 700
PHOENIX, ARIZONA 85016
(602) 445-8000

25

**CERTIFICATE OF SERVICE**

☒    I hereby certify that on April 30, 2020, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing.


By:  */s/ Diane J. Linn*
               Employee, Greenberg Traurig, LLP